IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| JASON BRYANT #288312 and <br> ANDREW HELTON #304808, <br> <br> Plaintiffs, <br> <br> v. <br> <br> JASON WOODALL, et al., <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br> <br> <br> <br> No. 1:14-cv-00067 <br> Senior Judge Haynes <br> Magistrate Judge Brown <br> <br> Jury Demand |

To: The Honorable William J. Haynes, Jr., Senior United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment. (Docket Entries 147, 170). For the reasons explained below, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment on Plaintiffs' RLUIPA claim be **DENIED** and Plaintiffs' Motion for Partial Summary Judgment be **DENIED**.

## I. INTRODUCTION AND BACKGROUND

Proceeding *pro se* and *in forma pauperis*, Plaintiffs filed their Complaint on May 22, 2014, requesting injunctive relief under 42 U.S.C. § 1983 for alleged violations of their rights under the First and Fourteenth Amendments, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, and state law. (Docket Entry 1). Plaintiffs are inmates in the custody of the Tennessee Department of Correction ("TDOC") at the Turney Center Industrial Complex ("TCIX") in Only, Tennessee. (Docket Entry 1). Defendants are TDOC employees named solely in their official capacities. (Docket Entry 1). The Complaint

1

also named two additional Plaintiffs who were later terminated from this action. Former Plaintiffs William C. Moss and George McDougal were released from TDOC custody on April 1, 2015 and December 7, 2015, respectively (Docket Entries 169-1, 169-2), and their cases were dismissed as moot on April 5, 2016 in light of their inability to benefit from the requested injunctive relief. (Docket Entry 181).

Plaintiffs assert that they are followers of the Odinic or Asatru faith, a religion that originated in Scandinavia and worships the gods Odin, Freya, Frey, Tyr, and Thor, among others. (Docket Entry 171-2, pp. 43: 1-13; 46: 10-11). Former Plaintiff McDougal filed a request for religious accommodations with the TDOC Religious Activities Committee on November 5, 2012, seeking accommodations that would allow him and other Odinist inmates to worship as they claim their faith requires. (Docket Entry 1-1, pp. 1-2). The requested accommodations included two hours of group worship per week; the purchase or donation of an altar cloth, mead horn cup, ritual Thor's hammer, rune staff, oak blessing bowl, oath ring, and rune set for group worship; recognition by TDOC as a legitimate religion; the purchase or donation of a rune set, religious amulet, mead horn cup and altar cloth for personal in-cell worship; and the observance of a religious feast day. (Docket Entry 1-1, p. 2).

Plaintiffs claim that group worship is necessary to the practice of their faith, and that they cannot worship properly as a group without items including a "Thor's hammer," five to eight inches long and made of oak, used to sanctify the group worship space (Docket Entry 171-2, p. 31: 4-23), and a "rune staff," twelve to twenty-four inches long and made of oak, used to ward off negative influences (Docket Entry 171-2, p. 32: 6-13). Plaintiffs suggest that these items could be kept in the chapel, and accessed only during group worship services. (Docket Entry 171-2, pp. 31: 15-23; 32: 14-15). Plaintiffs claim that other requested items are necessary for

2

personal in-cell worship, including a Thor's hammer amulet (Docket Entry 171-3, p. 27: 12-16) and wood runes or rune flashcards (Docket Entry 171-3, p. 32: 6-19).

The TDOC Religious Activities Committee denied Former Plaintiff McDougal's request on the grounds that each requested accommodation posed a threat to institutional safety and security. (Docket Entry 1-2, p. 10). In their Answer, Defendants assert that the denial was necessary because "the Asatru/Odinic religion and its associated symbolism, as practiced in TDOC facilities, is closely associated with prohibited gang activity and prohibited white supremacist activity, and is thus a prohibited security threat group[.]" (Docket Entry 58, ¶6, p. 2). Notwithstanding the denial of Former Plaintiff McDougal's request for accommodations, TDOC does not prevent inmates from ordering, possessing, or discussing literature related to Odinism (Docket Entry 171-2, pp. 15: 4-25; 21: 1-4), and inmates may select "Asatru/Odinism" as their religion on their inmate database file (Docket Entry 171-2, p. 37: 19-23). Defendants note that TDOC does not officially recognize any religion, but rather accommodates religious groups to the extent it deems possible in accordance with the institution's penological interests. (Docket Entry 171-2, pp. 37: 24-25; 38: 1-4).

Former Plaintiff McDougal filed a grievance challenging the denial of his request on August 29, 2013, but the decision of the Religious Activities Committee was upheld at each stage of the grievance appeal process. (Docket Entry 1-2). In this appeal to the courts, Plaintiffs seek injunctive relief that would require TDOC to (1) "remov[e] the burdens" from Plaintiffs' religious exercise, (2) officially recognize the Odinic or Asatru faith as a legitimate religion, and (3) allow Plaintiffs to obtain the religious items that they claim are needed for personal and group worship. (Docket Entry 1, pp. 16-17).

The District Judge screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and found colorable claims under federal and state law. (Docket Entry 8). The case was referred to the Magistrate Judge on December 12, 2014. (Docket Entry 77). Plaintiffs moved for partial summary judgment on October 2, 2015 (Docket Entry 147) and Defendants moved for summary judgment on December 30, 2015 (Docket Entry 170). Both Motions are now properly before the Court.

Plaintiffs did not respond to Defendants' Motion for Summary Judgment.[1] "Failure to respond to a moving party's statement of material facts . . . within the time periods provided by [the local rules of court] shall indicate that the asserted facts are not disputed for purposes of summary judgment." Local Rule 56.01(g). Because Plaintiffs did not respond to Defendants' Motion for Summary Judgment, Defendants' statements of fact are deemed undisputed for purposes of this analysis.

## II. ANALYSIS

### A. The Parties' Motions for Summary Judgment

**1. Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 258 (1986). The moving party has the burden of

---

[1] Former Plaintiff McDougal responded to Defendants' Motion for Summary Judgment after his release from TDOC custody but prior to his dismissal from this action. (Docket Entry 179). However, Former Plaintiff McDougal did not include Plaintiffs Bryant and Helton in his Response, and failed to dispute Defendants' statements of fact with specific citations to the record as required by Local Rule 56.01(c). For these reasons, Former Plaintiff McDougal's Response is deemed inapplicable to Plaintiffs Bryant and Helton.

4

showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Id*. at 249-50. In considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir. 2000). The court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

If there is a genuine issue of material fact, summary judgment should be denied. *Sowards*, 203 F.3d at 431. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325). Furthermore, "[a] 'mere scintilla' of evidence is not enough for the non-moving party to withstand summary judgment." *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006) (citation omitted).

## 2. RLUIPA

Both parties have moved for summary judgment on Plaintiffs' RLUIPA claim. The applicable portion of RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confided to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person:
>
> (1)    is in furtherance of a compelling governmental interest; and
>
> (2)    is the least restrictive means of furthering that compelling governmental interest.

5

42 U.S.C. § 2000cc-1(a). RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7)(A).

There are two threshold requirements an inmate must meet in order to state a claim under RLUIPA. First, the inmate's religious beliefs must be "sincerely held." *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014); *see Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005) (explaining that while RLUIPA bars inquiry into the centrality of a given practice to the prisoner's religion, the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity if the prison suspects it is a cover for illicit conduct).

Second, the inmate must produce evidence of a "substantial burden" on his religious exercise. 42 U.S.C. § 2000cc-2(b) ("[T]he plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion."); *see Haight*, 763 F.3d at 559-60. Prison officials substantially burden an inmate's religious exercise when they "place[ ] substantial pressure on an adherent to modify his behavior and to violate his beliefs," or "effectively bar" his sincere faith-based conduct. *Id.* at 565 (quoting *Hayes v. Tennessee*, 424 F. App'x 546, 555 (6th Cir. 2011) and *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007)).

Once the inmate has established a substantial burden on his religious exercise, the government bears the burden of demonstrating that any substantial burden on the plaintiff's religious exercise was "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000cc-1(a)(1)-(2), 2000cc-2(b); *see Hayes*, 424 F. App'x at 555.

## 2. Defendants' Motion for Summary Judgment

Defendants contend that Plaintiffs' deposition testimony shows that there is no substantial burden on Plaintiffs' religious exercise at TCIX, and that Plaintiffs have therefore failed to establish an essential element of their RLUIPA claim. (Docket Entry 171). Defendants argue that any burden on Plaintiffs' religion is less than substantial, and amounts to no more than an encumbrance or inconvenience. (Docket Entry 171, p. 8). Defendants cite precedent from this Circuit for the proposition that:

> [w]hile the Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action . . . placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs," it has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs.

(Docket Entry 171, p. 5) (citing *Living Water*, 258 F. App'x at 734) (citations omitted). Defendants argue that because Plaintiffs testified that they are allowed to read about and discuss their faith, they have some means of religious exercise, and therefore the denial of Plaintiffs' request for accommodations did not impose a substantial burden on their beliefs. (Docket Entry 171, p. 8).

The Magistrate Judge finds that this argument oversimplifies the law. Defendants frame the question in terms of the burden placed on Plaintiffs' ability to study their religion. However, RLUIPA defines "religious exercise" as "*any* exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A) (emphasis added). The Supreme Court and the Sixth Circuit have interpreted this definition as framing the substantial burden question around the specific religious activity the inmate claims he was prevented from engaging in, not around the inmate's ability to engage with his religion generally. *See Cutter*,

544 U.S. at 720 ("[T]he exercise of religion often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine[.]") (citation omitted); *Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015) (explaining that a Muslim inmate's religious exercise was substantially burdened by a restriction on his ability to grow a half-inch beard, notwithstanding the availability of a prayer rug, Islamic materials, correspondence with a religious adviser, and dietary accommodations); *Haight*, 763 F.3d at 564-65 (holding that the religious exercise of inmates claiming Native American beliefs was substantially burdened by the prison's denial of their request to purchase certain traditional foods for a powwow ceremony, notwithstanding the availability of other traditional foods).

Understood in this way, the Magistrate Judge finds that Defendants have not shown that there is an absence of evidence of a substantial burden on Plaintiffs' religious exercise. *Haight* is instructive on this point. In *Haight*, a group of inmates claiming Native American beliefs requested buffalo meat and corn pemmican for their annual powwow. *Haight*, 763 F.3d at 560. The prison denied their request, but did allow them to have traditional fry bread. *Id.* at 560, 565. The Sixth Circuit found that because "a powwow is indisputably a religious ceremony for members of this Native American Church, and, so far as this record shows, the inmates sincerely believe that a meal accompanied by corn pemmican and buffalo meat is part of that ceremony," the prison's bar of the requested foods substantially burdened the inmates' religious exercise. *Id.* at 564-65. The court explained that "[t]he prison's decision to bar corn pemmican and buffalo meat 'effectively bars' the inmates from this religious practice and forces them to 'modify [their] behavior' by performing less-than-complete powwows with less-than-complete meals." *Id.* at 565.

Here, Plaintiff Helton testified that Plaintiffs "cannot practice the way [their] faith tells [them] to" and "can't truly worship without the items that [they] requested." (Docket Entry 171-2, pp. 27: 1-3; 26: 23-24). Plaintiff Helton testified that although Plaintiffs are allowed to order literature related to Odinism, "[they] can't get the items [they] need to actually perform the rituals or the worship correctly." (Docket Entry 171-2, p. 15: 15-20). For example, Plaintiff Helton testified that a five-inch oak hammer and twelve- to twenty-four-inch oak rune staff are absolutely necessary to their group worship. (Docket Entry 171-2, p. 32: 2-18). Similarly, Former Plaintiff McDougal testified that a Thor's Hammer amulet is needed to sanctify personal and sacred space for in-cell worship. (Docket Entry 171-3, p. 27: 12-16). Former Plaintiff McDougal also testified that wooden runes or at least flashcards are required for in-cell worship. (Docket Entry 171-3, p. 32: 6-19).

The Magistrate Judge considers Plaintiffs' requests largely analogous to the requests in *Haight*. Construing the facts in the light most favorable to Plaintiffs, it appears that Defendants' decision to bar the items Plaintiffs requested "effectively bars" the inmates from a religious practice – group and personal worship – and forces them to "modify their behavior" by performing less-than-complete worship rituals. Whereas the Sixth Circuit found that Native American inmates were substantially burdened by less-than-complete powwows in the absence of certain requested foods, the Magistrate Judge finds more than a "mere scintilla" of evidence to suggest that Plaintiffs are substantially burdened by less-than-complete worship in the absence of the requested religious items.

The Magistrate Judge notes that although the *Haight* court found a substantial burden on the inmates' religious exercise, the court remanded the RLUIPA claim to resolve questions of fact regarding the sincerity of the inmates' beliefs and whether the prison's policy furthered a

9

compelling governmental interest in the least restrictive way. *See Haight*, 763 F.3d at 565-67. Here, Defendants maintain that there are triable issues of fact as to whether Plaintiffs' professed faith is a threat to security, and if so, whether the alleged restrictions are sufficiently narrowly tailored to meet a compelling governmental interest. (Docket Entry 171, pp. 2-3). The Magistrate Judge further notes that "nothing in RLUIPA bars a prison from 'question[ing] whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic.'" *Haight*, 763 F.3d at 565 (quoting *Cutter*, 544 U.S. at 725 n. 13). Because Defendants did not challenge the sincerity of Plaintiffs' beliefs as grounds for summary judgment, the Magistrate Judge has no basis for deciding the "threshold fact question of sincerity" here. *Id.* (citation omitted). Therefore, it remains to be seen whether Plaintiffs will ultimately prevail on their RLUIPA claim.

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Defendants' Motion for Summary Judgment be DENIED.

### 3. Plaintiffs' Motion for Partial Summary Judgment

As Defendants note in their Response (Docket Entry 149), Plaintiffs' Motion for Partial Summary Judgment is not accompanied by a separate, concise statement of undisputed material facts as required by Local Rule 56.01(b). Plaintiffs' Motion should therefore be DENIED for failure to comply with the Local Rule. *See generally Freeman v. Harris*, 2011 WL 445680 (M.D. Tenn. Feb. 3, 2011) (adopting Report and Recommendation denying pro se plaintiff's motion for summary judgment for failure to comply with Local Rule 56.01(b)); *Jackson v. Star Transport*, 2010 WL 3724847 (M.D. Tenn. Sept. 17, 2010) (same).

## B. Remaining Claims

In addition to RLUIPA, the Complaint alleged violations of Plaintiffs' rights under the First and Fourteenth Amendments and state law. (Docket Entry 1). The District Judge's screening Order allowing Plaintiffs' claims to proceed did not make specific reference to Plaintiffs' Fourteenth Amendment claim, but referred to Plaintiffs' First Amendment, RLUIPA, and state law claims specifically and Plaintiffs' "colorable claims under federal law" generally. (Docket Entry 8, pp. 2-3). Because the District Judge's Order did not explicitly dismiss Plaintiffs' Fourteenth Amendment claim, the Magistrate Judge construes the Order as permitting all claims raised in the Complaint to proceed.

Neither Plaintiffs nor Defendants addressed Plaintiffs' constitutional and state law claims in their Motions for Summary Judgment, which concerned only the RLUIPA claim. In light of the Magistrate Judge's recommendation that Defendants' Motion for Summary Judgment be denied, the fact that Defendants have identified triable issues concerning the RLUIPA claim, and the Magistrate Judge's anticipation that the same evidence may be used to resolve the outstanding RLUIPA issues and Plaintiffs' constitutional claims, the Magistrate Judge declines to recommend that Plaintiffs' constitutional claims be dismissed *sua sponte* pursuant to 42 U.S.C. § 1915(e)(2). Therefore, Plaintiffs' free exercise, equal protection, and state law claims are preserved.

## III. RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment on Plaintiffs' RLUIPA claim be **DENIED** and Plaintiffs' Motion for Partial Summary Judgment be **DENIED**.

The parties may file and serve written objections to the findings and recommendations made herein within fourteen (14) days of receipt of this Report and Recommendation. Fed. R. Civ. P. 72(b). Parties opposed to such objections must respond within fourteen (14) days of service of those objections. *Id.* Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

ENTERED this 28th day of June, 2016.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge